FILED

SEP 3 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GRANT NAPEAR,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>BONNEVILLE INTERNATIONAL CORPORATION,<br><br>Defendant - Appellee. | No. 25-2818<br><br>D.C. No. 2:21-cv-01956-DAD-SCR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Argued and Submitted August 14, 2026
Reno, Nevada

Before: BADE, FORREST, and VANDYKE, Circuit Judges.

Plaintiff-Appellant Grant Napear sued his employer Bonneville International Corporation (Bonneville) for retaliation and wrongful termination after he was fired for a statement that he made on social media about the Black Lives Matter movement just days after George Floyd was killed by a Minneapolis police officer. Napear

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

appeals the district court's grant of summary judgment for Bonneville. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

"We review the district court's grant of summary judgment *de novo*, and we may affirm on any basis supported by the record." *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 587 (9th Cir. 2018).

**1.** ***Retaliatory Termination in Violation of California Labor Code §§ 1101 and 1102.*** California Labor Code §§ 1101 and 1102 "serve to protect 'the fundamental right of employees . . . to engage in political activity without interference by employers.'" *Gay L. Students Ass'n v. Pac. Tel. & Tel. Co.*, 595 P.2d 592, 610 (Cal. 1979) (quoting *Fort v. Civ. Serv. Comm'n*, 392 P.2d 385, 387 (Cal. 1964) (en banc)), *superseded by statute as stated in In re Marriage Cases*, 183 P.3d 384, 437 n.56 (Cal. 2008). Section 1101 provides, "No employer shall make, adopt, or enforce any rule, regulation, or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." Cal. Lab. Code § 1101. Section 1102 similarly states, "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." *Id.* § 1102.

The crux of this case is the scope of these statutes' protections: do they protect

only an employee's political expression taken in a personal capacity or do they also protect political speech undertaken within the scope of an employee's professional capacity? The California Supreme Court has not answered this question. And the California Court of Appeals has done so only indirectly. For example, in *Ali v. L.A. Focus Publication*, the intermediate appellate court reasoned that while a reporter could be terminated for writing articles that violated his employer's editorial policies, there was a triable issue whether the employee could be terminated for political speech he engaged in "outside of the workplace." 5 Cal. Rptr. 3d 791, 799 (Ct. App. 2003) (discussing *Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802 (Ct. App. 1999)), *disapproved of on other grounds*, *Reid v. Google, Inc.*, 235 P.3d 988 (Cal. 2010). In that court's view, these statutes protect an individual's right to exercise his or her *personal* political rights. *See, e.g.*, *id.* at 798.

Federal district courts in California have likewise long concluded that §§ 1101 and 1102 do not prohibit employers from "plac[ing] reasonable restrictions on political activities by an employee acting in his or her official capacity."[1] *Abbey v. Mothers Against Drunk Driving*, No. S-90-0673 MLS, 1993 WL 559688, at *16 (E.D. Cal. May 14, 1993); *see, e.g.*, *Couch v. Morgan Stanley & Co.*, No. 1:14–cv–10–LJO–JLT, 2015 WL 4716297, at *14–15 (E.D. Cal. Aug. 7, 2015), *aff'd* 656 F.

[1]Indeed, Napear's counsel acknowledged at oral argument that these statutes would not apply to political speech spoken in a professional capacity.

App'x 841 (9th Cir. 2016).

Without any binding authority, our task is to predict how the California Supreme Court would decide the question. *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 815 (9th Cir. 2019). In doing so, "we are obligated to follow the decisions of the state's intermediate appellate courts, unless there is convincing evidence that the" state supreme court would decide the issue differently. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021) (internal quotation marks and citation omitted). We have no reason to think that the California Supreme Court would interpret the relevant statutes to prevent employers from limiting employees' political expression undertaken within the scope of their employment such that it impacts the public reputation of the employer. *See, e.g.*, *Fort*, 392 P.2d at 389 (recognizing as reasonable "the need to limit some political activities such as . . . the pursuit of political purposes" while an employee is "discharging the duties of his position"). Thus, we apply that understanding of the scope of §§ 1101 and 1102 to this case.

Napear was a public figure in his role as a radio-show host with Bonneville, and his employment contract incorporated a Social Media Policy that required him to maintain "a high standard of care and level of responsibility" in his "[p]ersonal use of [s]ocial [m]edia" since "the results of such use are inseparably connected with [Bonneville]'s public image and reputation." Bonneville further "reserve[d] the right

to set limits on [public-figure] employees' [social-media] use" and "claim[ed] ownership in the results of any [personal social-media] use" by public-figure employees that involved "in any way . . . such celebrity persona." The Social Media Policy also provided that any conduct on social media that "adversely affect[ed] . . . [Bonneville]'s legitimate business interests may result in disciplinary action up to and including termination."

Based on this expansive Policy, we conclude that Napear's use of his @GrantNapearshow Twitter account to respond to a question about his "take on" Black Lives Matter involved his celebrity persona such that his statement fell within the scope of his professional capacity. Based on "the nature of [Napear's] work," and his contractual relationship with Bonneville, even Napear's claimed personal social-media use was subject to his professional obligations. As such, California Labor Code §§ 1101 and 1102 do not protect his public expression, and we affirm the district court's grant of summary judgment for Bonneville on Napear's claims brought under those statutes.[2]

**2.** ***Wrongful Termination in Violation of Public Policy.*** Because Napear's claim for wrongful termination in violation of public policy is derivative

[2]Because we conclude that §§ 1101 and 1102 do not apply, we do not need to reach the parties' dispute about whether Bonneville's casting decisions are protected expression or whether such decisions are subject to regulation under §§ 1101 and 1102.

of his claim brought under California Labor Code §§ 1101 and 1102, *see Ali*, 5 Cal. Rptr. 3d at 798–99, we also conclude that the district court properly granted summary judgment on this claim.

**AFFIRMED.**[3]

[3]The motion to withdraw as Bonneville's counsel filed by Tanner Brad Camp is granted. Dkt. 34.